Our next case for argument is 24-2050 Swearengen v. Army. I don't think I said that name right. Swearengen v. Army. I probably still didn't. Counsel, tell me how to say the name. Daniel Gamino. Oh, no, not your name. I meant the name of your client. Oh, I'm sorry. Marcus L. Swearengen. Swearengen. Thank you. Yes, Your Honor. Thank you, Mr. Swearengen. Daniel Gamino, my privilege to represent Mr. Swearengen in this case today. We are here on this appeal from an opinion from the Merit System Protection Board. For Mr. Swearengen, in legal parlance, it was a good news, bad news opinion from the MSPB. The good news was they did reinstate him to employment. They did strike one of the two allegations against him for making inappropriate remarks. That part was good. What the MSPB failed to do, they did not strike the second allegation. That second allegation is still standing that he created a disturbance in the workplace. And because of that, when they reinstated him, they did not reinstate him to his original position, but to a lower position. That was the order from the MSPB. The issue and the problem with that is the MSPB, when you read their opinion, you can look back, forwards, and upside down. They make no reference to this court's precedent that this court set most recently in 2023, Williams v. Federal Bureau of Prisons. If one of two charges is upheld, then there needs to be, there must be, an analysis under the 12 Douglas factors to see if the sanction fits the remaining charge. Didn't the board in substance, didn't the board in substance review those factors, even if it didn't cite the case by name? I think you're asking if the MSPB followed the factors, even if they didn't say so, is that? Well, I mean, I'll tell you, I think they followed the factors. I think they said so. They just didn't say the word Douglas factors. Because, I mean, if you look at the actual analysis itself, it tracks with the factors one is meant to consider under the Douglas inquiry. Well, in the first place, the opinion never says we're considering the Douglas factors. And even if you try to reverse engineer in the Douglas factors like counsel did in her brief, you still have a number of the factors that were never weighed, were never commented on in the record. To, as an example, what is the agency put on? No evidence that the penalty of removal was consistent with their past practices. They never put on any evidence. It was consistent with the table of penalties at the agency. They never put on any evidence about the clarity of the notice to Mr. Swearengin about his conduct. Can I ask you to turn to the substantial evidence question? You argue that there's no substantial evidence to support the board's conclusions that the second charge was established, right? I'm sorry, I couldn't hear all of it. You argue that there's no substantial evidence to support the board's conclusions that the charge should be sustained, right? Yes. Right? Can we talk about that? Because I'm not seeing here some of the things that the board purports to find in the evidence. I don't find, for example, any testimony that there was a loud altercation. I find no testimony that the noise came from your client as opposed to the other individual involved. And I don't find any testimony that there was disruption caused by the noise as opposed to the overall toxic environment. Well, and I think you have put your finger on it, Your Honor. There is no substantial evidence of any of those things that you mentioned. And the standard on appeal is under Title 5 U.S.C. 7703, MSPB decision must be affirmed unless it is unsupported by substantial evidence. And that is exactly and precisely our first ground of appeal that when you look at the record, the evidence is not there. Can I just ask you? So when I read your blue brief, I think your gray brief too, but the blue one is the one that matters for what you're arguing. I took it that your argument about the substantial evidence was simply no work of the agency of the particular office was disrupted so that there wasn't a disturbance. Not anything else, not even if people were, you know, got up from their desks to see what was going on. It wasn't Mr. Swearengin's voice that they were attracted to or anything else. So there, and I think the board said on the disruption point, it was enough that people were, you know, diverted from their work for a period to see what was going on. And that does seem supported by substantial evidence. But I'm not sure you made any other argument on that point. Tell me where you did. Well, that was the central argument that we made in regard to that there was no substantial evidence of a disruption. There is testimony on cross-examination from both the proposing official, Kyle Anderson. There's testimony at the trial below from the deciding official, Colonel Martin. Nobody could point to any failure to meet a deadline, lost customer, complaint because something was not done on a timely manner. There was no indicia, no evidence of any kind of disruption in the workplace. And the agency had the burden to show that and to produce substantial evidence of that. It seems if there is substantial, if there is a disruption in the workplace, and I will grant you some of the testimony was people came to see what the matter, what the language was and what was going on. But again, besides idle curiosity, there was no evidence of a substantial disruption in the workplace. And that's the allegation against him. And the lack of substantial evidence of that disruption undercuts the MSPB board's finding that there was substantial evidence to show any workplace disruption. That's the only allegation that's left standing. And you are very correct, Mr. Justice, in this is a workplace. There are trucks bringing in big radars to be worked on and rumbling around. There's forklifts back and forth to unload and load and people running back and forth and clanking of tools and power tools. Everything in this workplace is noisy. Everything in this workplace, it is not the reading room at the Library of Congress. It's not a monastery. It is a noisy workplace with activity and work going on by all the  And in all of that cacophony, there is no evidence that anything was disrupted enough that they missed a deadline or they didn't get something finished or they made a mistake because they were distracted. None of that is in the record. And that's why we raise that in this appeal that the only standing allegation against him left is that there was some kind of workplace disruption and there is no substantial evidence of that. And I would agree with you. If you read the record, there may be this word. This is not a case where you're looking for a preponderance of If the scales tip just the slightest, the requirement is that the MSPB decision must be supported by substantial evidence. That's a higher standard, not a criminal standard, but it's higher than just a preponderance. And if there was some idle standing around or asking what happened or something may have happened, but that's different from a disruption that is sufficient enough to remove a person from his career or to sanction him when you turn him back to work at some lower level. There must be in the record substantial evidence of that workplace disruption and here there was not. And to me, that's one of the major errors that occurred at the MSPB. And the reason it occurred, my opinion, they did not follow this court's direction from Williams versus Bureau of Prisons that we quoted in our brief and the other cases strictly from this court to the MSPB that have reviewed it that said, if you're going to strike one of the grounds, then the remaining grounds need to be reviewed under the 12 Douglas factors and that is not in the MSPB opinion. And what is in the MSPB opinion, if you get down toward the end footnote 10, we'll describe for the court very much better than I can, the obscene, abhorrent, racial language from his supervisor, Robert Kraft, about the employees, African-American employees are from the  They don't want much horrible, horrible language that sounds like somebody in the plantation veranda looking over the slaves. That's the language of 1850. That's the language of his supervisor. You don't have a race discrimination claim here. You gave it up when you decided to come to this court. You do not have a race discrimination claim because you expressly gave it up in order to come to this court rather than to go to district court for a Title VII action. Right, but I don't raise it for that purpose, but just to show the pressures and the stresses on Mr. Swearengin when he's working in that environment, when that's the language of his supervisor and the language of his boss, and so I don't that's one of the factors that I don't think was properly weighed by the MSPB below and it is our request that the MSPB opinion be reversed in part and he be reinstated to his regular rate of pay without a demotion. That is our request. Thank you. Is it Aradi? Yes. May it please the court. The court should affirm the board's decision sustaining the charge of workplace disruption and mitigating the penalty from a removal to a  So the board here is not relying on the Boyd testimony, right? Because Boyd says there was no disruption, but they're not relying on it.  Okay, so the question is whether the other testimony supports the notion that Mr. Swearengin caused a disruption. I don't see any testimony that he made a noise that caused a disruption in the workplace. If you can show me where the testimony is, I'd be happy to look at it. There's two places, basically, there's two written statements. Those are on appendix 295 and 297 from Tyrone Farmer and Acosta Jenkins respectively. 295 and 297. Both of these basically say that at the time of the incident involving Mr. Swearengin and Mr.  Oh, sorry. 295. This certainly doesn't do it. 295 is, I heard some noise coming from the bay, but I mean this statement doesn't even attribute the noise to Mr. Swearengin as opposed to to Mr. Boyd. And it just said I heard some noise as I was going out the back. That doesn't, that does not create a disruption in the workplace, noise. Noise could just be talking. I heard them talking, like he doesn't, noise? I heard noise. I mean, there's noise in the courtroom right now. Nobody's causing a disruption, but I hear noise. I don't think that does it. So what's the other one? That's 295. 297. Same thing, right? Yes, very similar. And then there's separately testimony from Acosta Jenkins, who's one of the people who provided a written statement and that starts on appendix 3723 and goes on to 3724. It starts at the bottom of 3723. The question is at line 23. 37 what? 23. Yeah. Which line? 23. Yeah, but that's not testimony that something that Mr. Swearengin did, yelling or something like that caused disruption. There isn't any such testimony. You put aside the Boyd testimony, which you agree the board didn't rely on. There's no testimony that Mr. Swearengin caused a disruption. For this one, maybe it's better to start up further on page 3723 for a little more context. It's starting at line 5. The question is to Mr. Jenkins about what happened on March 12, 2020, which is the date of the incident in question. There's a question about whether he heard Mr. Swearengin call Mr. Boyd stupid. He did not. They talk about that and then in the context of talking about what Mr. Swearengin did or did not say, that's when there's the question about whatever it was that was in the radar shop on that date. Did that disturb your work on that date? And then he goes on to talk about unrest and how it hindered further operations going forward. He says at 3724, he says, how did that disturb you? He said, we had been, the shop had been working in a toxic environment for so long time. I mean, it doesn't, I don't see that testimony as Mr. Swearengin made a lot of noise that disrupted people. I just don't see there is any such testimony. Right? Okay. I've shown you all of the record that I have on this issue. So can I ask you the question that I asked your friend on the other side? I took it from his blue brief that he was making the argument that there was no disruption. Whatever went on, it didn't disrupt anything. I don't remember, I don't think there is in the blue brief an argument that if there was disruption, it wasn't me who caused it. I just don't see that argument. Did he make that argument either to us or to the board? No. The only thing that I think see is the argument that whatever was going on in the minutes, hour, when this incident occurred, it didn't disrupt the work. Which seems to me a different point. Did he make that point to the board? His argument is that there was no workplace disruption, not that there was a disruption and he's not responsible. What do we assume that that's right? What do we do and assume also that in fact all the testimony cited by the he was responsible for such disruption as occurred. What do we do with those two things? It looks like there's no evidence to support an element of the charge, but that he didn't make that point. I think you still have to go to whether there's substantial evidence that supports the charge of workplace disruption. Okay. Okay, anything further? I'd just like to briefly visit the argument about the Douglas factors. The board properly considered the Douglas factors in its decision, though it did not use the words Douglas factors. You can tell from the decision that the board was considering the Douglas factors because some of the language tracks the Douglas factors, for example, the nature and seriousness of the misconduct in relation to the employee's position and responsibilities. I certainly agree with you on that, but there are certain factors that seem entirely absent from discussion. What about that? For example, comparators, that kind of thing. So, on the one hand, there are other Douglas factors that I think by mitigating the penalty, the board did consider. But just mentioned, I'm saying, but it doesn't mention, it does not specifically mention them. But is that okay? Is that okay? I mean, the board was, the board is charged when it gets rid of one of the charges and is only going to move forward on the other. It is charged with reviewing and doing its own independent assessment of the Douglas factors on just this one charge. If they expressly don't mention several of the Douglas factors, does that suffice? The board is only required to analyze the relevant Douglas factors. So, if they decided that some of those factors were not relevant to this case, then they are able to do that without error. Do you have any cases of ours or anything that would suggest it's okay for the board to not mention some of the Douglas factors? I mean, the Douglas factors case says that only the pertinent ones might be considered in a particular case. Specifically on the question of comparators, which your friend on the In the record, I can't recall specifically where, but the deciding official did consider whether there were any comparators and found there were none. Okay, why don't we hear from Mr. Camino? Just two quick thoughts, if it may please the court. Everybody's been working hard this morning, looking through the record, trying to find evidence of disruption in the workplace. I think if three learned justices are having the same problem I am, it is clear that the MSPB opinion does not contain evidence to support that allegation of disruption. The other thing I would bring to the court's attention in closing is, counsel said near the end of her argument about, well, they only have to review the relevant Douglas factors. Well, that's not what any of this court's previous opinions say. This court's opinions from Williams, Ball versus Department of Navy, Marano versus Department of Interior, Torres versus Department of Homeland Security, all say you need to review the Douglas factors, not just to pick and choose. We think they failed to do that and their opinion shows that, and so we press our claim for the relief we request. Thank you. Thank both counsel. This case is taken under submission.